## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LISA AND WILLIAM WOOLLEY, individually; | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. CIV-21-159-SLP |
| BOARD OF COUNTY COMMISSIONERS OF WAGONER COUNTY, OKLAHOMA, et al., | ) ) ) ) | |
| Defendants. | ) ) | |

## O R D E R

Before the Court are several related motions. First, Defendant Danny Elliott ("Detective Elliott") filed a Second Special Appearance and Motion to Dismiss [Doc. No. 20], to which Plaintiffs Lisa and William Woolley filed a Response [Doc. No. 24], and Detective Elliott Replied [Doc. No. 29].

Second, Defendants Board of County Commissioners ("the Board") and Chris Elliott ("Sheriff Elliott") filed a Motion to Dismiss [Doc. No. 32], to which Plaintiffs responded, *see* [Doc. No. 34], and the Board and Sheriff Elliott replied, *see* [Doc. No. 35].

Third, Plaintiffs filed a Motion to Amend [Doc. No. 36]. The Board and Sheriff Elliott filed a Response [Doc. No. 37] in opposition.[1] No reply was filed.

Finally, Plaintiffs filed a second Motion for Leave to Amend Pleadings. [Doc. No. 56]. Defendant Megan Sinclair filed a Response [Doc. No. 62], as did the Board and

---

[1] These Defendants also filed an Errata/Correction [Doc. No. 38] in which they correct the title of their filing. Because there is no substantive change to the Response, the Court references ECF Doc. No. 37 for clarity.

Sheriff Elliott, *see* [Doc. No. 63]. Plaintiffs filed a Reply in support of their Motion, but Detective Elliott filed an Unopposed Motion to Strike the Reply [Doc. No. 65]. Based on the unopposed nature of the Motion, the Court granted that Motion and struck the Reply. *See* [Doc. No. 66]. Accordingly, the Court considers only the Motion and Defendants' Responses. On February 22, 2024, the Court held a hearing on all four pending motions.

## I.    Introduction[2]

Plaintiffs "were court-appointed guardians" of their 14-month-old grandson, E.W. [Doc. No. 9] ¶ 11. On March 30, 2018, Plaintiff Lisa Woolley found E.W. deceased in his crib. *Id.* ¶ 10. Detective Elliott, the lead investigator for Wagoner County Sheriff's Office, arrived at Plaintiffs' home to investigate E.W.'s death.

On the way to examine the scene, Plaintiffs allege Detective Elliott "drew the conclusion that E.W. was murdered" before arriving at their home. *Id.* ¶ 13. Detective Elliott remarked to his supervisor "that he was going to a 'murder scene.'" *Id.* He searched the home and "left behind . . . two weeks' worth of soiled diapers," and "certain evidence contained in the crib where E.W. had died." *Id.* ¶ 14.

At the time he died, E.W.'s older brother, C.W., also lived in Plaintiffs' home. At some point after E.W. died, a DHS investigator conducted a forensic interview of C.W. *Id.* ¶ 17. This interview "was recorded and did not implicate the Plaintiffs." *Id.* ¶ 16.

Defendant Megan Sinclair was "a nurse who performed medical nursing SANE evaluations for Kids' Space Child Advocacy Center" in Muskogee, Oklahoma. *Id.* ¶ 8.

---

[2] Unless otherwise noted, all facts come from the Amended Complaint [Doc. No. 9], which is the operative pleading in this case.

Plaintiffs allege Defendant Sinclair[3] falsely "reported that 5-year-old C.W. claimed that E.W. was raped daily while sitting on the couch" with his grandfather, Plaintiff Bill Woolley. *Id.* Plaintiffs allege that Defendant Sinclair's report of the first forensic interview contained several anomalies, including: (1) "C.W. referred to his grandpa as William," although he did not know Plaintiff's "formal name"; (2) C.W. "articulated the abuse in [a] manner" he would be incapable of because he "is developmentally delayed"; (3) C.W. asked to go home to Plaintiffs and said, "No," when asked by a foster parent if C.W. "remember[ed] all the bad things [Plaintiff Bill Woolley] did to [him]"; and (4) Defendant "Sinclair quoted C.W. with giving elaborate answers, yet the interviews that were recorded show C.W. [using] rushed and jumbled words" that the interviewers "struggled to comprehend." *Id.* ¶¶ 16, 18. Defendant Sinclar later "testif[ied] that she wrote exactly what C.W. told her" and that "C.W. had no speech impediment."[4] *Id.* ¶ 18.

In a later forensic interview, C.W. "denied telling Sinclair anything incriminating when pressed by the interviewer with leading questions." *Id.* ¶ 16. Plaintiffs allege Detective Elliott attended this interview "and had knowledge of C.W. exonerating the Plaintiffs." *Id.* ¶ 17. They further allege both this forensic interview and the first forensic

---

[3] While Plaintiffs purport to sue Megan Sinclair individually and "in her capacity as an employee of Kid's Space Child Advocacy Center of Muskogee," there are no allegations in either the Original Complaint [Doc. No. 2] or the Amended Complaint [Doc. No. 9] that attach legal significance to this distinction. There are also no allegations about the entity, itself, and it appears that Plaintiffs only intended to demonstrate that the alleged wrongful actions occurred in her role as a nurse. Accordingly, the Court treats all claims brought against Defendant Megan Sinclair as brought against her individually.

[4] It is unclear from the Amended Complaint when or where Defendant Sinclair provided this testimony.

interview (in which C.W. "did not implicate the plaintiffs") were withheld from them. *Id.* ¶¶ 16–17.

Following Detective Elliott's investigation, Plaintiffs were both arrested in April 2018 on "allegations of sexual assault and/or enabling sexual assault of C.W." *Id.* ¶ 19. They "spent four months in jail" before their bond was reduced and they "were finally able to bond out." *Id.* ¶ 20. Plaintiffs were then "re-arrested on December 20, 2018" after being charged with "first-degree murder and sexual assault of E.W." *Id.* ¶ 21. Their bond was reduced in March 2019. *Id.* In June 2020, "the District Attorney dismissed the first-degree murder charge and all sexual assault charges based on lack of evidence." *Id.* ¶ 22. Nevertheless, he "refiled lesser criminal charges against the Plaintiffs for alleged child abuse and enabling child neglect." *Id.* These charges were dismissed in March 2021. *Id.*

Plaintiffs allege two causes of action pursuant to 42 U.S.C. § 1983. First, they allege they "were the victims of an unlawful seizure under the 4th Amendment to the U.S. Constitution by their false incarceration caused by the actions of the Defendants." *Id.* ¶ 27. Second, they allege their "substantive due process" rights were violated "due to unlawful incarceration based on false facts and bogus criminal charges." *Id.* ¶ 33.

## II.    <u>Governing Standards</u>

Dismissal of a complaint is proper if the complaint fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In making this determination, the court must accept all well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff. *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019). The court disregards conclusory statements and determines only

whether the remaining factual allegations plausibly suggest the defendant is liable. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The question to be decided is "whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (internal quotation omitted).

The Court also notes that with regard to Section 1983 claims, there is a "need for careful attention to particulars, especially in lawsuits involving multiple defendants." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013); *see also Robbins*, 519 F.3d at 1250 (explaining that when plaintiff brings Section 1983 claims against multiple defendants, "it is particularly important . . . that the complaint make clear exactly who is alleged to have done what to whom").

Leave to amend a complaint should be freely given when justice so requires. Fed. R. Civ. P. 15(a). Leave to amend may be denied, however, on grounds of futility. *Hasan*

*v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1101–02 (10th Cir. 2019).  A proposed amendment is futile if the amended complaint would be subject to dismissal.  *Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1288 (10th Cir. 2008); *see also Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999) ("The futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim.").

### III.    Discussion

The Court first considers the Defendants' Motions to Dismiss.  The Court then takes up Plaintiffs' pending Motion to Amend, as well as their Second Motion for Leave to Amend.

#### A.  Danny Elliott's Motion to Dismiss

Detective Elliott moved to dismiss the Amended Complaint pursuant to Rule 12(b)(2), (4), and (5) of Civil Procedure [Doc. No. 20].  He argues that dismissal is proper because (1) the summons, which was not signed by the Court Clerk, was "incurably defective," (2) Plaintiffs cannot show good cause for their failure to timely effect service, and (3) Plaintiffs are not entitled to a permissive extension.  *Id.* at 2.  For their part, Plaintiffs concede that the initial summons was defective and that service was untimely.  *See* [Doc. No. 24] at 1–2.  They argue that they have established good cause for their failure because they attempted to serve Detective Elliott on multiple occasions and ultimately succeeded less than two weeks after the 90-day deadline.  For the reasons stated below, Danny Elliott's Motion to Dismiss is GRANTED.

Plaintiffs filed their Complaint in this action on May 28, 2021, [Doc. No. 2], and an Amended Complaint [Doc. No. 9] on July 20, 2021. Plaintiffs asserted individual and official-capacity claims against Detective Elliott in both pleadings. Detective Elliott filed a Special Appearance and Motion to Dismiss [Doc. No. 12] on August 19, 2021, arguing that Plaintiff attempted service of process on Detective Elliott using a summons that "was not issued by the Clerk of Court, does not contain the Clerk's signature, and does not bear the Court's seal." *Id.* at 3; *see also* [Doc. No. 12-1].

On August 24, 2021, the Clerk of Court issued a summons to Detective Elliott for the first time.[5] [Doc. No. 13]. This summons was served on Detective Elliott on September 8, 2021. [Doc. No. 15]. Following service, Detective Elliott filed his Second Special Appearance and Motion to Dismiss [Doc. No. 20], incorporating his arguments from his First Special Appearance and Motion to Dismiss [Doc. No. 12] and additionally arguing that service on September 8, 2021, was untimely and no mandatory or permissive extension is warranted.

Federal Rule of Civil Procedure 4(m) provides that:

[i]f a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against the defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

---

[5] The Court notes that while the summons issued on August 24, 2021, still does not bear the Clerk of Court's seal, Detective Elliott does not raise this issue in his motion. *See* [Doc. No. 20] at 3 (referring to the August 24, 2021 summons as the "corrected summons"). Accordingly, the Court does not address this issue here.

Fed. R. Civ. P. 4(m). Thus, if a plaintiff shows good cause for the delay, an extension of the service deadline is mandatory. *Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995). Absent a showing of good cause, the district court must still consider whether a permissive extension of time is warranted. *Id.*

Here, Plaintiffs' service of process on Detective Elliott is untimely. Plaintiffs filed their Complaint on May 28, 2021, resulting in a service deadline of August 26, 2021. Fed. R. Civ. P. 4(m). The filing of an amended complaint does not restart the clock with respect to the 90-day time limit for effecting service under Rule 4(m). *See Constien v. United States*, 628 F.3d 1207, 1216 (10th Cir. 2010) (time to effect service under Rule 4(m) runs from the filing of the initial complaint; later amendments to the complaint do not change the time limit except for newly added parties); *see also Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1148 (10th Cir. 2006) ("[T]he [90]-day period provided by Rule 4(m) is not restarted by the filing of an amended complaint except as to those defendants newly added in the amended complaint.").

Plaintiffs have not shown good cause for their failure to effect timely service. Plaintiffs' counsel acknowledged receiving "notification from Defendant's attorney that the summons was improper" on August 19, 2021—a week before the service deadline of August 26, 2021. *See* [Doc. No. 24] at 2. Yet, Plaintiffs did not attempt to correct the summons and effect proper service prior to the deadline, nor did they seek an extension of time to serve Detective Elliott. At the February 22 hearing, Plaintiffs' counsel offered no justification other than describing this as an "oversight." Accordingly, Plaintiffs have failed to establish good cause so as to warrant a mandatory extension of time. *See e.g.*, *In re*

*Kirkland*, 86 F.3d 172, 174 (10th Cir. 1996) ("This court has interpreted the phrase narrowly, rejecting inadvertence or neglect as 'good cause' for untimely service."); *Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995); *Despain v. Salt Lake Area Metro Gang Unit*, 13 F.3d 1436, 1438 (10th Cir. 1994) ("[G]ood cause" in Rule 4 "should be read narrowly to protect only those plaintiffs who have been meticulous in their efforts to comply with the Rule." (internal quotation marks and citation omitted)); *Cox v. Sandia Corp.*, 941 F.2d 1124, 1125 (10th Cir. 1991) ("[T]o characterize inadvertence as good cause would allow an exception to swallow the rule.").

Although Plaintiffs have failed to show good cause, the Court must further consider whether to grant a permissive extension.  The following factors guide the Court's determination: (1) whether "the applicable statute of limitations would bar the refiled action"; (2) whether the plaintiff tried to follow "the complex requirements of multiple service" when serving the United States, its agencies, or employees; and (3) whether there is reason to protect a pro se plaintiff "from consequences of confusion or delay attending the resolution of an in forma pauperis petition." *Espinoza*, 52 F.3d at 842 & n.8 (internal quotation marks omitted).

Here, only the first factor is at play as there are no complex service issues and Plaintiffs were not pro se or in forma pauperis.[6] Although Plaintiffs would be time-barred from refiling the action, that factor carries little weight here because Plaintiffs' Fourth Amendment claim was time-barred in the first place, as discussed in this Order.  Further,

---

[6] The Court notes that Plaintiffs' counsel recently filed a motion to withdraw [Doc. No. 69] on April 23, 2025, which this Court granted.  [Doc. No. 70].  No additional counsel have entered an appearance, and Plaintiffs are now pro se.

even where the statute of limitations would bar Plaintiffs' refiled claims, that fact does not make dismissal inappropriate. *See, e.g., Valdez v. Chuwanti*, No. 1:22-cv-00003-KWR/JHR, 2022 WL 17093445 at *3 (D.N.M. Nov. 21, 2022) (declining to grant permissive extension where the plaintiff "summarily suggest[ed] that the statute of limitations would bar refiling of the suit, but [did] not explain or show that it would"); *cf. Despain v. Salt Lake Area Metro Gang Unit*, 13 F.3d 1436, 1439 (10th Cir. 1994) ("The fact that the statute of limitations has run, however, does not demonstrate good cause and does not make dismissal under Rule 4[(m)] inappropriate."). As the Tenth Circuit has observed, it is the plaintiff's "responsibility to monitor the progress of service and to take reasonable steps to assure that [defendants are] timely served." *May v. Okla. Dep't of Corr.*, No. 99-6267, 2000 WL 633244 at *2 (10th Cir. May 17, 2000). Under these circumstances, a permissive extension of time is not warranted.

Where, as here, the time to file an action has expired, "a dismissal without prejudice can have the practical effect of a dismissal with prejudice." *AdvantEdge Bus. Grp. v. Thomas E. Mestmaker & Assocs., Inc.*, 552 F.3d 1233, 1236 (10th Cir. 2009). If the dismissal is effectively one with prejudice, courts consider criteria known as the "*Ehrenhaus* factors," which include: (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions. *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe Cnty. Just. Ctr.*, 492 F.3d 1158, 1162 (10th Cir. 2007); *see also Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir.1992).

These factors weigh in favor of dismissal. Plaintiffs are culpable for the delay and failure to serve Detective Elliott.[7] Neither party addresses whether Detective Elliott would be prejudiced by an extension, but the Court finds that due to at least one claim being time-time barred prior to its filing, Detective Elliott would be prejudiced by having to "proceed with the case." *C.f. Shea v. Donohoe Const. Co.*, 795 F.2d 1071, 1074 (D.C. Cir. 1986). Further, even if Defendant Elliott were not prejudiced by the late service, "[t]he absence of prejudice to the defendants, by itself, does not equate to good cause on the part of the plaintiffs." *Despain v. Salt Lake Area Metro Gang Unit*, 13 F.3d 1436, 1439 (10th Cir. 1994) (analyzing a one-week delay in service).

The Court did not warn the Plaintiffs in advance that dismissal would be likely due to ineffective service, but Plaintiffs did receive Detective Elliott's initial Motion to Dismiss prior to the service deadline and did not attempt to correct the summons or file for an extension of time. [Doc. No. 24] at 4. Finally, the Court finds that no sanction less than dismissal is practical under the circumstances. Thus, the Court finds dismissal without prejudice is warranted under the *Ehrenhaus* factors, even if it is equivalent to dismissal

---

[7] Plaintiffs argue the failure to timely serve Detective Elliott is due to his "evasion of service" during multiple attempts in June and July 2021. [Doc. No. 24] at 3. No evidence exists in the record to support this assertion. Not only was a summons not issued by the Clerk of Court until August 24, 2021, [Doc. No. 13], the record shows Detective Elliott advised a process server during the first attempt on June 14, 2021, that "he would not accept service and to give the documents to his attorney CZW-Law firm." [Doc. No. 24-1] at 1. Plaintiffs do not allege that any effort was made to serve his attorney.

with prejudice. For these reasons, Defendant Danny Elliott's Motion to Dismiss [Doc. No. 20] is GRANTED.[8]

### B. Board and Chris Elliott's Motion to Dismiss

Defendants Sheriff Elliott and the Board move to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of Civil Procedure. [Doc. No. 32]. They argue dismissal is proper because (1) the claims are barred by the statute of limitations, (2) Plaintiffs failed to state a claim for municipal liability under 42 U.S.C. § 1983, (3) Plaintiffs' claims against the Board are duplicative of the claims against Sheriff Elliott, (4) Plaintiffs failed to state a claim against Sheriff Elliott in his individual capacity, and (5) Sheriff Elliott is entitled to qualified immunity. *Id.* at 3–12. For the reasons discussed below, Defendants' Motion to Dismiss is GRANTED.

### i. Statute of Limitations

"A hodgepodge of state and federal law governs the timeliness of claims under 42 U.S.C. § 1983." *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir.2008). "The statute of limitations is drawn from the personal-injury statute of the state in which the federal district court sits." *Id.* "Federal law, however, determines the date on which the claim accrues and the limitations period starts to run." *Id.* "State law governs any tolling of that period, except that federal law might also allow additional equitable tolling in rare circumstances." *Id.* (internal citations omitted). The Court may dismiss a claim as time-barred under Rule 12(b)(6) "when the dates given in the complaint make clear that the right

---

[8] Accordingly, any requests from Plaintiffs to amend their claims against Detective Elliott are futile, as amendment cannot cure defective service. *See Constien*, 628 F.3d at 1216; *Bolden*, 441 F.3d at 1148.

sued upon has been extinguished*." Cosgrove v. Kan. Dep't of Soc. & Rehab. Servs.*, 332 F. App'x 463, 465 (10th Cir. 2009) (quoting *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)).

Here, as the parties agree, Plaintiffs' claims are governed by a two-year statute of limitations. *See* Pl.'s Resp. [Doc. No. 34] at 2; Defs.' Mot. to Dismiss [Doc. No. 32] at 3–4; *see also Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004). The parties disagree, however, as to the date of accrual. Defendants argue that Plaintiffs' claims began accruing on the date(s) of Plaintiffs' arrests. [Doc. No. 32] at 4. In their Response, Plaintiffs only address accrual for a "malicious prosecution" claim, arguing such claims do not accrue until the criminal proceedings have terminated in the plaintiff's favor, and therefore, they argue their claims are timely. [Doc. No. 34] at 2. Plaintiffs are partially correct.

The Tenth Circuit has held that "a plaintiff who claims that the government unconstitutionally imprisoned him has at least two potential constitutional claims"—one arising under the Fourth Amendment and one arising under the procedural component of the Due Process Clause of the Fourteenth Amendment. *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008). "If he has been imprisoned *without legal process,* he has a claim under the Fourth Amendment analogous to a tort claim for false arrest or false imprisonment." *Id.* (emphasis added). In contrast, "[i]f he has been imprisoned pursuant to *legal but wrongful process,* he has a claim under the procedural component of the Fourteenth Amendment's Due Process Clause analogous to a tort claim for malicious prosecution." *Id.* (emphasis added). The court further reasoned that a Fourth Amendment

violation can become a Fourteenth Amendment violation following the detainee's first receipt of legal process. *Id.* (explaining that an initial seizure is governed by the Fourth Amendment but that, at some point following arrest and certainly by the time of trial, "the constitutional analysis shifts to the Due Process Clause") (citing its prior decision in *Pierce v. Gilchrist,* 359 F.3d 1279 (10th Cir.2004), and stating that the Supreme Court left this question unanswered in its seminal decision in *Wallace v. Kato,* 549 U.S. 384 (2007)).

Critically, "[b]oth Fourth Amendment claims and due process claims for unconstitutional imprisonment are subject to special federal rules of accrual." *Id.* The Fourth Amendment claim for false arrest or imprisonment begins to run "when the alleged false imprisonment ends," which is "when the victim is released or when the victim's imprisonment becomes pursuant to legal process—when, for example, he is bound over by a magistrate or arraigned on charges." *Id.* (citing *Wallace*, 549 U.S. at 389) (quotations omitted). "Thus, either the date of release or the date of sufficient legal process starts the statute of limitations running for the Fourth Amendment claim." *Id.*

In contrast, the "period of time between the institution of that process and its favorable termination—through acquittal, habeas corpus, voluntary dismissal, etc.—forms a second claim, arising under the Due Process Clause." *Id.* This type of Fourteenth Amendment claim "accrues, at the earliest, when favorable termination occurs." *Id.*

Plaintiffs' Amended Complaint asserts both claims discussed in *Mondragon*—a Fourth Amendment claim and a Fourteenth Amendment claim both stemming from unlawful incarceration. Am. Compl. [Doc. No. 9] ¶¶ 27, 33. Thus, under the *Mondragon* framework, the statute of limitations for Plaintiffs' Fourth Amendment claim accrued when

14

Plaintiffs were released from custody or on the date of "sufficient legal process." The Amended Complaint asserts two arrests each of Lisa Woolley and William Woolley: the first on April 12, 2018[9] (the "First Arrest") and the second on December 20, 2018[10] (the "Second Arrest"). *Id.* ¶¶ 19–21. Following the First Arrest, Plaintiffs' Amended Complaint alleges that a preliminary hearing was held on July 31, 2018, and they were subsequently released from custody on bond. [Doc. No. 9] at ¶ 20. For the Second Arrest, Plaintiffs do not include the date of a preliminary hearing or the duration of the arrest in their allegations, but the state court docket demonstrates that a preliminary hearing was held on March 29, 2019, and the Plaintiffs were subsequently released from custody on bond.[11] Thus, Plaintiffs' Fourth Amendment claim accrued when they received legal process at the preliminary hearings on July 31, 2018 and March 29, 2019. Accordingly, the deadline to file this claim under the two-year statute of limitations required Plaintiffs to file this claim by March 29, 2021, at the latest. Plaintiffs did not file suit until May 28, 2021, rendering the Fourth Amendment claim for false arrest as time-barred. Accordingly, Count I is dismissed with prejudice.

---

[9] *See State of Oklahoma v. William Woolley III*, No. CF-2018-167 (Wagoner Cnty., Okla., April 12, 2018); *State of Oklahoma v. Lisa Woolley*, No. CF-2018-168 (Wagoner Cnty., Okla., April 12, 2018).

[10] *See State of Oklahoma v. William Woolley III*, No. CF-2018-553 (Wagoner Cnty., Okla., Dec. 20, 2018); *State of Oklahoma v. Lisa Woolley*, No. CF-2018-554 (Wagoner Cnty., Okla., Dec. 20, 2018).

[11] The court may take judicial notice of the state court docket sheet. *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) ("We may exercise our discretion to take judicial notice of publicly filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand."); *Stack v. McCotter,* 79 Fed. Appx. 383 (10th Cir. 2003) (unpublished opinion) (finding state district court's docket sheet is an official court record subject to judicial notice under Fed.R. Evid. 201).

As to Count II, Plaintiffs argue that their claims are not time-barred because accrual for a "malicious prosecution" claim begins after favorable termination of the underlying proceedings. Defendants rightfully point out that Plaintiffs did not bring a "malicious prosecution" claim in their Amended Petition. While Plaintiffs do not directly state that the "malicious prosecution" claim referenced in their Response [Doc. No. 34] is the same claim as Count II of the Amended Complaint (a violation of the Fourteenth Amendment), the Court assumes Plaintiffs were referring to Count II. *See Mondragon*, 519 F.3d at 1083 ("After the institution of legal process, any remaining constitutional claim [under the Fourteenth Amendment] is analogous to a malicious prosecution claim."). Regardless of Plaintiffs' references to a "malicious prosecution" claim in their Response, Plaintiffs are correct that Count II accrued when "favorable termination" of the underlying proceedings occurred. *Id.* at 1082. Because the cases underlying both the First Arrest and Second Arrest were dismissed on June 15, 2020, [Doc. No. 9] at ¶ 22, the deadline to file was June 15, 2022. Thus, Count II was filed within the two-year limitation period. However, as discussed below, this claim warrants dismissal on other grounds urged by Defendants.

### ii.  Municipal Liability under 42 U.S.C. § 1983

The Board and Sherriff Elliot argue that the Court should dismiss Plaintiffs' claims against them because there is no respondeat superior liability under Section 1983, and Plaintiffs have not alleged facts necessary to state a Section 1983 claim against a municipal defendant. [Doc. No. 32] at 5–7. Specifically, Defendants argue that Plaintiffs have not plausibly alleged "any facts to show any policy or custom of the Board or Sheriff was the moving force behind any alleged constitutional violation or that Plaintiffs suffered any

injury as a result of any policy or custom of the Board or Sherriff." *Id.* at 6. As explained

below, the Court agrees.

Section 1983 "is a remedial vehicle for raising claims based on the violation of

[federal] constitutional rights." *Brown v. Buhman*, 822 F.3d 1151, 1161 n.9 (10th Cir.

2016). To state a claim under the statute, "a plaintiff must allege the violation of a right

secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law." *West v. Atkins*,

487 U.S. 42, 48 (1988). A municipality or other local governmental body is a "person"

within the meaning of the statute. *Monell v. Dep't of Soc. Servs. of City of New York*, 436

U.S. 658, 690 (1978).

"A municipality or other local government may be liable under" Section 1983 "if

the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a

person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60

(2011). But municipalities "are responsible only for 'their *own* illegal acts'" and "are not

vicariously liable under § 1983 for their employees' actions." *Id.* (emphasis in original)

(quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)); *see also George v. Beaver*

*County*, 32 F.4th 1246, 1253 (10th Cir. 2022) (same).

To establish municipal liability under Section 1983, "'a plaintiff must show 1) the

existence of a municipal policy or custom, and 2) that there is a direct causal link between

the policy or custom and the injury alleged.'" *Bryson v. City of Oklahoma City*, 627 F.3d

784, 788 (10th Cir. 2010) (quoting *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir.

1993)). Put another way, for a local government unit such as the Board to be liable for

violating Section 1983, that unit's allegedly unconstitutional act (or the act of the defendant in his or her official capacity) must execute "a government's policy or custom." *Monell v. Dep't of Social Services,* 436 U.S. 658, 694 (1978); *Clark v. City of Draper,* 168 F.3d 1185, 1187 n. 5 (10th Cir.1999) (interpreting *Monell*).

A plaintiff may establish such municipal policy or custom by alleging facts capable of demonstrating one of the following:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Id.* (internal quotation marks, brackets, and citation omitted).

Plaintiffs' Amended Complaint does not allege facts sufficient to state a claim for municipal liability as to the Board or Sheriff Elliott. The sole reference to any policies, training, or customs is found in a single conclusory allegation stating, "[The Board] and Sheriff Chris Elliott [sic] are named for the conduct of the Defendant, Danny Elliot [sic], amounting to an unconstitutional policy as specified below." [Doc. No. 9] at ¶ 6. There is no further explanation regarding the "unconstitutional policy,"[12] nor are there any specific

---

[12] While Plaintiffs attempt to correct this deficiency in their Response [Doc. No. 34] through additional allegations and argument related to alleged customs and training (or lack thereof), the Court declines to consider these allegations as they were not pleaded in the four corners of the Amended Complaint. *Kearney v. Dimanna*, 195 F. App'x 717, 721 (10th Cir. 2006) (citing *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995)).

allegations regarding the Board or Sheriff Elliott's conduct. Indeed, Plaintiffs' Amended Complaint only contains bare, conclusory allegations against "Defendants" with no specificity as to *who* is alleged to have done *what* that resulted in a constitutional violation. *See Robbins*, 519 F.3d at 1250 (explaining that when a plaintiff brings Section 1983 claims against multiple defendants, "it is particularly important . . . that the complaint make clear exactly who is alleged to have done what to whom"). As such, Plaintiffs' frequent reference to the "Defendants" collectively precludes the Court from ascertaining the specific role of any particular individual.

Further, Plaintiffs acknowledge they seek to hold the Board and Sheriff Elliott vicariously liable for Detective Elliott's actions. *See* Am. Comp. [Doc. No. 9] at ¶ 6 (Sheriff Elliott "are named for the conduct of the Defendant, Danny Elliot [sic], amounting to an unconstitutional policy . . . ."); *see also* Pl.'s Resp. [Doc. No. 34] at 3 ("The Board is named for the conduct of the Defendants amounting to an unconstitutional policy."). But liability on a respondeat superior theory is unavailable for a Section 1983 claim. *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019). For these reasons, the Board and Sheriff Elliott are entitled to dismissal of Count II.

### iii. Board Liability Under Section 1983

Sheriff Elliott and the Board further argue that because Plaintiffs asserted Section 1983 claims against Sheriff Elliott, in his official capacity, to establish municipal liability, claims against the Board are duplicative and unnecessary. The Court agrees. *See Martinez v. Beggs*, 563 F.3d 1082, 1091 (10th Cir. 2009) ("To the extent [plaintiff] brings a claim against [the sheriff] in his official capacity, it is the same as bringing a suit against the

county."); *Kirkendall-Heller v. Bd. of Commissioners of Oklahoma Cnty.*, No. CIV-21-0011-F, 2021 WL 2371348, at *1 (W.D. Okla. June 9, 2021) ("[Okla. Stat. tit. 19, § 4] now makes clear that the correct means by which to name a county as a defendant in an action involving § 1983 claims (claims not arising out of contract) is to name the appropriate county officer in his or her official capacity, not the Board."); *see also Foreman v. Oklahoma Cnty. Sheriff*, No. CIV-21-1062-F, 2022 WL 2513384, at *2 (W.D. Okla. July 6, 2022) (dismissing without prejudice, claims against Board of County Commissioners as duplicative); *Barrick v. Bd. of Cnty. Comm'rs of McCurtain Cnty.*, No. CIV-23-129-JFH-GLJ, 2023 WL 6932540 (E.D. Okla. Sept. 25, 2023), *report and recommendation adopted sub nom. Barrick v. Bd. of Cnty. Comm'rs of McCurtain Cnty., Okla.*, No. CIV-23-129-JFH-GLJ, 2023 WL 6926254 (E.D. Okla. Oct. 19, 2023) (dismissing the Board of County Commissioners "for the sake of judicial economy and efficiency").

Here, a sheriff is the final policymaker "responsible for the proper management of the jail in his county and the conduct of his deputies." *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988), *abrogated on other grounds by Ashcroft v. Iqbal,* 556 U.S. 662 (2009); *see also* Okla. Stat. tit. 19, § 547.    As noted by the Tenth Circuit, "the Board [of County Commissioners] has no statutory duty to hire, train, supervise or discipline the county sheriffs or their deputies." *Meade,* 841 F.2d at 1528; *accord Bryson v. Okla. Cnty. ex rel. Okla. Cnty. Det. Ctr.,* 2011 OK CIV APP 98, ¶ 12, 261 P.3d 627, 632.

Plaintiffs specifically state that both the Board and Sheriff Elliott "are named for the conduct of the Defendant, Danny Elliot [sic], amounting to an unconstitutional policy . . . ."

20

[Doc. No. 9] at ¶ 6; *see also* Pl.'s Resp. [Doc. No. 34] at 3 ("The Board is named for the conduct of the Defendants amounting to an unconstitutional policy."). The claims against the Board and Sheriff Elliott are thus duplicative, and the Court finds that Plaintiffs' Section 1983 claims against the Board should be dismissed without prejudice for purposes of judicial economy.

### iv. Sheriff Chris Elliott Individually

Sheriff Elliott argues that it is unclear whether Plaintiffs bring a claim against him individually, and the Court agrees. While the Amended Complaint's caption is styled to name Sheriff Elliott "individually and in his official capacity as Wagoner County Sheriff," there are no allegations against him in an individual capacity. [Doc. No. 9]. It further appears that Plaintiffs intended for any precluded claims against the Board to "attach to the individual Defendants in their *official* capacity." *Id.* at ¶ 6 (emphasis added). Additionally, Plaintiffs' Response provides no further elucidation as Plaintiffs wholly fail to respond to this argument. [Doc. No. 34]. Because Plaintiffs fail to plead any factual allegations that tie Sheriff Elliott's actions to Plaintiffs' alleged constitutional violations, Plaintiffs have failed to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claims against Sheriff Elliott in his individual capacity—to the extent any are alleged—are dismissed.[13]

---

[13] Because the Court grants dismissal on these grounds, the Court need not reach Sheriff Elliott's qualified immunity argument. However, the Court notes that Plaintiffs do not allege any personal conduct by Sheriff Elliott in their Amended Complaint, so Plaintiffs cannot meet their burden to show that Sheriff Elliott violated their constitutional rights, further warranting dismissal of Sheriff Elliott in his individual capacity. *See Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016) ("When a defendant raises a qualified immunity defense, the court must dismiss the action unless

## C. Plaintiffs' Second Motion to Leave to Amend[14]

Following the February 22 hearing, Plaintiffs filed a Second Motion for Leave to Amend Pleadings [Doc. No. 56], which included a copy of their Proposed Second Amended Complaint ("PSAC"). Defendant Sinclair filed a Response [Doc. No. 62] opposing amendment, as did Sheriff Elliott and the Board [Doc. No. 63]. Although Plaintiffs filed a Reply, they did so out of time. They did not oppose the motion to strike the reply filed by the Sheriff Elliott and the Board, so that Reply was stricken from the record. [Doc. No. 66]. Upon review, the Second Motion for Leave to Amend [Doc. No. 56] is DENIED.

### i. Statute of Limitations and Equitable Tolling

The PSAC alleges the same initial two claims as the Amended Complaint (violations of the Fourth and Fourteenth Amendments due to unlawful incarceration). The PSAC additionally adds a third claim for "malicious prosecution and abuse of process." [Doc. No. 56] ¶ 41–46. It appears Count III is brought pursuant to 42 U.S.C. § 1983. *Id.* at ¶ 44.[15]

---

the plaintiff shows that (1) the defendant violated a statutory or constitutional right, and (2) the right was clearly established at the time of the violation.").

[14] Following Defendants' dismissal motions, Plaintiffs moved to amend (the First Motion to Amend). [Doc. No. 36]. At the February 22 hearing on those motions, Plaintiffs' counsel appeared to concede that the proposed amended complaint attached to the First Motion to Amend still suffered from the same deficiencies present in the Amended Complaint [Doc. No. 9]. Considering counsel's statements and Plaintiffs' filing of the more recent motion to amend (the Second Motion to Amend) [Doc. No. 56], the First Motion to Amend [Doc. No. 36] is DENIED as MOOT.

[15] It is not abundantly clear whether Plaintiffs intended to bring any state-law claims. But even if they did, the federal claims are subject to dismissal, and the Court would decline to exercise supplemental jurisdiction over the any state law claims. *See* 28 U.S.C. § 1367(c)(3); *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1314 (10th Cir. 2021) ("When all federal claims have been

Defendants Sinclair, Sheriff Elliott, and the Board argue that amendment is futile because the statute of limitations of all claims began accruing on the dates of Plaintiffs' arrests and therefore expired prior to Plaintiffs filing suit. [Doc. No. 62] at 6–7, and [Doc. No. 63] at 5–6. Plaintiffs' position on this issue is much less clear.

Plaintiffs take inconsistent positions regarding the statute of limitations for their claims from one paragraph to the next in the PSAC. *Compare* PSAC [Doc. No. 56] at ¶ 4 ("[T]he statute of limitations was tolled from running on the Plaintiff's [sic] first two causes of action that began in April of 2018 and December of 2018 . . . the statute of limitations was tolled in this matter till March 15, 2023, on Plaintiffs' claims") *with id.* at ¶ 5 ("The Plaintiffs position is that the statute of limitation in all three sets of felony charges did not begin to run until the final dismissal of the third set of charges on March 15, 2021."). This is also a different approach from Plaintiffs' position in the briefing on dismissal of the Amended Complaint, which argued that accrual began when the criminal proceedings were favorably terminated, but did not raise tolling. [Doc. No. 34] at 2. Given that the criminal dismissals occurred on June 15, 2020 and March 15, 2021—within the two-year period that Plaintiffs filed this action—the Court is perplexed by Plaintiffs' arguments that the limitations period was "tolled in this matter til March 15, 2023." PSAC [Doc. No. 56] at ¶ 4.

Regardless, the Court has already analyzed and resolved the question of accrual as to Counts I and II in Section III(B)(i), *supra.* Like in the Amended Complaint, it is clear

---

dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." (quoting *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011)).

from the face of the PSAC [Doc. No. 56] that Count I alleging a Fourth Amendment violation is time-barred against all Defendants.    As to Count II, it remains largely unchanged from the Amended Complaint, alleging a substantive due process claim under the Fourteenth Amendment related to the Plaintiffs' "unlawful incarceration." *See id.* ¶¶ 36–40.    That "claim accrues, at the earliest, when favorable termination occurs." *Mondragon*, 519 F.3d at 1083.    A malicious prosecution claim under Section 1983 is the same.    *Id.* ("We also held that a due process claim for malicious prosecution arises only once 'the original action,' whatever form it has taken, has "been terminated in favor of the plaintiff."). So in summary: the Court finds only Count I is time barred.

The next inquiry is whether equitable tolling applies.  Plaintiffs argue the statute of limitations was equitably tolled until March 15, 2023—two years after the last charges against them were dropped.  *Id.* ¶¶ 4–5.  Plaintiffs' PSAC cites *Shrum v. Cooke*, 60 F.4th 1304 (10th Cir. 2023), as the basis to support equitable tolling.  *See* [Doc. No. 56] at 6, ¶ 4.  However, *Shrum* provides no lifeboat for Plaintiffs' claim, as the *Shrum* court *rejected* equitable tolling.  In *Shrum,* the plaintiff argued that the statute of limitations for his Section 1983 claims should have been tolled during the pendency of his criminal charges because requiring him to pursue a civil suit before the charges had been dismissed would require him to "admit and use facts that could have been used against him in the criminal proceeding."  *Id.* at 1308.  Essentially, Plaintiff argued that "there is an unconstitutional 'trade-off' between a statutory right—the § 1983 causes of action—and a constitutional right."  *Shrum*, 60 F.4th at 1310.  The Tenth Circuit disagreed, holding that equitable tolling

would not apply.[16]  Thus, to the extent Plaintiffs argue they could not have asserted claims premised on violations of their Fourth Amendment rights until all criminal charges were dismissed or terminated, those arguments are unavailing, and the statute of limitations for Count I was not tolled.[17]  Accordingly, amendment is futile as to Count I.  While Counts II and III are not time barred, amendment is nonetheless futile for the reasons stated below.

### ii.    Futility Due to Pleading Deficiencies

The Court agrees with Defendants that the PSAC suffers many of the same deficiencies as the Amended Complaint and therefore, amendment would be futile.  *See generally* [Doc. Nos. 62, 63].  At the outset, the Court has already determined herein that the claims against the Board are redundant given that the Sheriff is named in his official capacity.  Accordingly, amendment is denied as to the Board.  The Court similarly already determined that amendment cannot cure the service deficiencies as to Detective Danny Elliott, *see* n.7, so amendment is also denied as to Detective Elliott.

As to Defendant Sinclair,[18] there are no allegations sufficient to establish she was "acting under color of state law," which requires her to have "exercised power possessed

---

[16] Although the *Shrum* court reviewed the plaintiff's unpreserved claim for plain error, it would have also affirmed under the ordinary abuse-of-discretion standard.  *See id.* at 1308 n.1.

[17] Again, Counts II and III were timely filed, rendering Plaintiffs' equitable tolling argument moot as to these claims.

[18] The record reflects that while Defendant Sinclair was served a copy of the Original Complaint [Doc. No. 2], which she answered [Doc. No. 4], Defendant Sinclair appears to not have been served a copy of the Amended Complaint.  *See* Am. Compl.  [Doc. No. 9] at 10 (certificate of mailing only mailed to the other Defendants' counsel).  However, neither Defendant Sinclar nor Plaintiffs formally raise this issue to the Court.  Further, the Amended Complaint and the Original Complaint contain the same causes of action and allege identical facts as it pertains to Sinclair specifically. After the Amended Complaint was filed, counsel for Defendant Sinclair entered an appearance [Doc. No. 45], and appeared at the February 22 hearing wherein she made oral argument in

by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Marin v. King*, 720 F. App'x 923, 934 (10th Cir. 2018) (quotation omitted). "A person may be a state actor because she is a state official," or "because she 'has acted together with or obtained significant aid from state officials, or because [her] conduct is otherwise chargeable to the State.'" *Gorenc v. Proverbs*, 462 F. Supp. 3d 1137, 1143 (D. Kan. 2020) (quoting *Johnson v. Rodrigues*, 293 F.3d 1196, 1202 (10th Cir. 2002)); *see also Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995).

Plaintiffs describe Defendant Sinclair as an "employee of Kids' Space Child Advocacy Center of Muskogee," and "a nurse who performed medical nursing SANE evaluations for Kids' Space Child Advocacy Center located in Muskogee." PSAC ¶¶ 1, 13. There is nothing to suggest she, herself, is a state official. And the only allegations

---

opposition to Plaintiffs' First Motion to Amend [Doc. No. 36]. Following the hearing, Plaintiffs filed their Second Motion to Amend, to which Defendant Sinclair filed a response and objection. [Doc. No. 62]. Accordingly, even if there were a defect with service of the Amended Complaint as it pertains to Defendant Sinclair, that issue is presumptively waived. *See Hopper v. Wyant*, 502 F. App'x 790, 792 (10th Cir. 2012) ("An individual may submit to the jurisdiction of the court by appearance, and voluntary use of certain court procedures may constitute constructive consent to the personal jurisdiction of the court.") (citing *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703–04 (1982)); *Harmon v. Alexander*, 2023 OK CIV APP 7, ¶ 22, 526 P.3d 1176, 1183 ("If one appears before the court, the person is submitting to the jurisdiction of the court as if the person had been served."); *United States v. Heijnen*, 376 F. Supp. 2d 1193, 1195 (D.N.M. 2005) ("By appearing in Court and filing motions without raising the sufficiency of service, [defendant] waived his objection to the adequacy of service and voluntarily submitted to the Court's personal jurisdiction."). Further, because the Court finds amendment futile as to Defendant Sinclair, and because the allegations against her in the PSAC are functionally identical to those asserted in the Amended Complaint, Plaintiffs' claims against Defendant Sinclair are dismissed. *Hall v. Bellmon*, 935 F.2d 1106, 1109-10 (10th Cir. 1991) ("[A] court may dismiss sua sponte when it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile." (internal quotation marks and citation omitted)).

about her relationship with Detective Elliott are wholly conclusory. *See id.* ¶¶ 1 (alleging Detective Elliott and Defendant Sinclair "conspired to recommend prosecuting Plaintiffs, fabricated evidence, ignored evidence and wrongfully referred the Plaintiffs to the Wagoner County District Attorney's Office on criminal charges"), 21 ("These false statements by Sinclair were done in conspiracy with Danny Elliott."), 22 ("[F]alse allegations of sexual abuse by the Plaintiffs were pushed by Sinclair and [Detective] Elliott.").

Such conclusory allegations are insufficient to state a claim under Rule 12(b)(6). *See Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994) ("Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim."); *Scott v. Hern*, 216 F.3d 897, 907 (10th Cir. 2000) ("When a plaintiff in a § 1983 action attempts to assert the necessary 'state action' by implicating state officials . . . in a conspiracy with private defendants, mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action."). And while Plaintiffs make allegations that certain exculpatory forensic interviews were withheld from them, there are no factual allegations that Defendant Sinclair participated in such withholding or even knew about the existence of the favorable interviews. Accordingly, the PSAC is subject to dismissal against Defendant Sinclair on futility grounds.

Finally, amendment is also futile as to Sheriff Elliott both individually and in his official capacity because the PSAC fails to sufficiently plead a claim against him or for municipal liability. First, as with the Amended Complaint, the PSAC remains unclear

whether Plaintiffs intended to bring claims against Sheriff Elliott in an individual capacity. Indeed, the Amended Complaint and the PSAC are functionally identical as it relates to allegations against Sheriff Elliott specifically. The only new allegation attributed specifically to Sheriff Elliott relates to a press conference wherein "he publicly accused the Plaintiffs of murder of their grandson, E.W., based on the investigations of the Defendants Sheriff Chris Elliott and Deputy Sheriff Danny Elliott." [Doc. No. 56] at ¶¶ 10, 16. But as Sherriff Elliott points out, Plaintiffs "have not alleged the Sheriff personally brought [the] charges against them or even that he played any role in bringing the charges against them." [Doc. No. 63] at 12. Further, there is no allegation or connection to Sheriff Elliott's statements at a press conference and any purported constitutional violation.

There is also no allegation that Sheriff Elliott—or any of the named Defendants— had "an ulterior or improper purpose" in the alleged improper use of the court's process. *Erikson v. Pawnee County Bd. of County Com'rs*., 263 F.3d 1151, 1155 n.5 (10th Cir. 2001) ("Under Oklahoma law, an "ulterior or improper purpose" is an essential element of the tort of abuse of process."). Similarly, Plaintiffs' failure to sufficiently plead that no probable cause existed forecloses Plaintiffs' claim for malicious prosecution. *Id.* at 1154 ("Under Oklahoma law, a lack of probable cause to bring a criminal prosecution is an essential element of the tort of malicious prosecution."). While Plaintiffs' PSAC states that "Defendants had no probable cause," [Doc. No. 56] at ¶¶ 4, 6, this "conclusory allegation is insufficient to survive defendants' motions to dismiss." *Erikson*, 263 F.3d at 1154 (10th Cir. 2001) ("Here, beyond the conclusory allegation in his complaint that no probable cause existed, plaintiff has not alleged any specific facts showing there was a lack

of probable cause for his arrest and prosecution on the charges of first degree murder.").
Thus, Count III is not sufficiently pled as to Sheriff Elliott (or any of the named
Defendants), rendering amendment futile.

Municipal liability under Section 1983 has likewise not been properly pled.  The
PSAC contains the same conclusory allegations that warranted dismissal of the Amended
Complaint.  Plaintiffs did not add a single new allegation referencing a specific policy or
custom that would be sufficient to plead municipal liability against Sheriff Elliott in his
official capacity.  Rather, Plaintiffs add a single conclusory statement that "official and
governmental liability exists based on the . . . failure of Sheriff Chris Elliott to either
properly train and/or supervise Deputy Detective Danny Elliott . . . ." [Doc. No. 56] at ¶ 31.
This is insufficient.  *Waller*, 932 F.3d at 1282; *Bryson*, 627 F.3d at 784 (To establish
municipal liability, "a plaintiff must show 1) the existence of a municipal policy or custom,
and 2) that there is a direct causal link between the policy or custom and the injury
alleged.").    Additionally, as with the Amended Complaint, Plaintiffs' allegations in the
PSAC against "Defendants" collectively fail to satisfy pleading standards for a Section
1983 claim.  *See Robbins*, 519 F.3d at 1250 (explaining that when a plaintiff brings Section
1983 claims against multiple defendants, "it is particularly important . . . that the complaint
make clear exactly who is alleged to have done what to whom").  Accordingly, the PSAC
does not plead municipal liability, so denial of leave to amend is warranted.

29

IV.    **Conclusion**

IT IS THEREFORE ORDERED that Defendant Danny Elliott's Second Special Appearance and Motion to Dismiss [Doc. No. 20] is GRANTED and Plaintiffs' Amended Complaint against Defendant Danny Elliott is DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Defendants Board and Chris Elliott's Motion to Dismiss [Doc. No. 32] is GRANTED as follows:

1.  Plaintiffs' Count I is DISMISSED WITH PREJUDICE.

2.  Plaintiffs' Count II is DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Amend [Doc. No. 36] is DENIED as MOOT.

IT IS FURTHER ORDERED that Plaintiffs' Second Motion for Leave to Amend Pleadings [Doc. No. 56] is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' claims against Defendant Megan Sinclair are DISMISSED WITHOUT PREJUDICE.

A separate judgment of dismissal will be entered contemporaneously with this Order.

IT IS SO ORDERED this 18th day of June, 2025.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE